UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Holding a Criminal Term
Grand Jury Sworn in on May 15, 2009

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. |
| | : | |
| | : | Grand Jury Original |
| v. | : | |
| | : | Violations: |
| BERNARD B. KERIK, | : | 18 U.S.C. § 1001 |
| Defendant. | : | (Making a False Statement) |
| | : | |

**INDICTMENT**

The Grand Jury charges that:

**Introduction**

1. On or about January 5, 1998, **BERNARD B. KERIK**, the defendant, was appointed Commissioner of the New York City Department of Corrections ("NYCDOC"). In that capacity, **KERIK** oversaw and managed all New York City ("the City") institutions established for the care and custody of felons, misdemeanants, prisoners under arrest and awaiting arraignment, violators of local laws and ordinances, and, in some instances, witnesses.

2. On or about August 20, 2000, **KERIK**, the defendant, left his post as the Commissioner of the NYCDOC and, pursuant to appointment by the Mayor, became the Commissioner of the City Police Department, where he remained, until he resigned on or about January 1, 2002. As the City's chief law enforcement officer, **KERIK** had a duty to prevent crime, detect and arrest offenders, and enforce and prevent the violation of all laws and ordinances in force in the City.

3. During 1999 and 2000 :

(a) "XYZ" was a group of related companies, based in New Jersey, which was: (i) engaged in construction and waste management; (ii) engaged in work for private, municipal and state clients in both the City and New Jersey; (iii) seeking to be selected for additional public sector projects; and (iv) seeking various permits and approvals from the City to conduct municipal-regulated business.

(b) "John Doe #1" was a close associate of **KERIK** and an employee of XYZ.

(c) "John Doe #2" was a close relative of **KERIK**, and an employee of XYZ.

(d) "John Doe #3" was a principal of XYZ.

(e) Section 2604(b)(5) of Chapter 68 of the City Charter, which chapter is entitled "Conflicts of Interest," provided that: "No public servant shall accept any valuable gift, as defined by rule of the [City Conflicts of Interest Board] from any person or firm which such public servant knows is or intends to become engaged in business dealings with the [C]ity....."

(f) **KERIK**, on behalf of XYZ, spoke to the City regulators who were considering whether XYZ should receive one or more permits to conduct certain business in and with the City.

(f) **KERIK** purchased and caused to be renovated a cooperative apartment in Riverdale, New York (the "Riverdale Apartment").

(g) XYZ arranged and paid for an architect and an interior designer to plan the renovation of the Riverdale Apartment. The renovation of the apartment included demolishing old walls, and constructing new walls and floors, a new kitchen, new marble bathrooms with a jacuzzi, and a marble entrance rotunda.

(h) After the plans for the Riverdale Apartment were complete, XYZ hired a general contractor to renovate it. XYZ paid a total of more than $255,000 to contractors and subcontractors who renovated the apartment.

4. On June 30, 2006, **KERIK** pleaded guilty in the Supreme Court of the State of New York for Bronx County to violating Section 2604(b)(5) of the City Charter and during the plea proceeding, for the purpose of that guilty plea, admitted to accepting a valuable gift from XYZ in the form of $165,000 in renovations to the Riverdale Apartment during the period 1998 to 2000.

5. On or about April 10, 2003, John Doe #1 was convicted of a federal felony charge in the United States District Court for the Eastern District of New York.

6. From in or about November 2004 through on or about December 11, 2004, **KERIK** was under consideration by the White House for the position of Secretary of the United States Department of Homeland Security. This position involved vital national security interests, and **KERIK**, during inquiries in connection with his prospective appointment, was required to answer questions concerning his background including questions relating to John Doe #1 and XYZ.

## COUNT 1
## Making a False Statement

7. The allegations contained in paragraphs one through six of this Indictment are incorporated herein by reference as if stated in full.

8. On or about the dates set forth below, in the District of Columbia and elsewhere, **BERNARD B. KERIK**, the defendant, in a matter within the jurisdiction of the executive branch of the government of the United States, did knowingly and wilfully falsify, conceal and

cover up by trick, scheme and device material facts, and did make, materially false, fictitious and fraudulent statements and representations, namely, the following:

| APPROXIMATE DATES | OFFICIAL TO WHOM STATEMENTS MADE | FALSE STATEMENTS |
|---|---|---|
| 11/17/2004-12/3/2004 | White House Official A | **KERIK** denied that there was any possible concern the President should have about **KERIK's** relationship with John Doe #1 or XYZ. |
| 11/17/2004-12/3/2004 | White House Official A | **KERIK** denied that, as a public official in New York City, he had had any financial dealings with individuals seeking to do business with the City. |

**(Making a False Statement in Violation of Title 18, United States Code, Section 1001)**

## COUNT 2
## Making a False Statement

9. The allegations contained in paragraphs one through six of this Indictment are incorporated herein by reference as if stated in full.

10. On or about the date set forth below, in the District of Columbia and elsewhere, **BERNARD B. KERIK**, the defendant, in a matter within the jurisdiction of the executive branch of the government of the United States, knowingly and wilfully did falsify, conceal and cover up by trick, scheme and device a material fact, and did make, materially false, fictitious and fraudulent statements and representations, including, among others, the following:

| APPROXIMATE DATE | DOCUMENT AT ISSUE | FALSE STATEMENTS |
|---|---|---|
| 12/5/2004 | email to White House Official B | **KERIK** gave an account of his relationship with John Doe #1, wherein he covered up material facts and made false and misleading statements about the total cost of the Riverdale Apartment renovations and who paid for them. In the account, **KERIK** stated, among other things: "[John Doe #1] suggests that [John Doe #3] should do the renovations on the apartment. Kerik refuses because [John Doe #3] is doing business with the City ([John Doe #3] agrees)." In the account, **KERIK** further stated, among other things, that there was no "conflict between [John Doe #1] and Kerik and the City in anyway [sic]." **KERIK** failed to disclose that XYZ had financed the renovation of the Riverdale Apartment and that he had, on behalf of XYZ, spoken to City regulators who were considering whether XYZ should receive one or more permits to conduct certain business in and with the City. |

**(Making a False Statement in Violation of Title 18, United States Code, Section 1001)**

A TRUE BILL



FOREPERSON



/s/

ATTORNEY FOR THE UNITED STATES IN
AND FOR THE DISTRICT OF COLUMBIA